IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS JOHNSON,<br><br>                Plaintiff,<br>v.<br><br>JOSEPH C. KORSZNIAK, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 2:17-cv-03946 |

## OPINION

**Slomsky, J.**                                                                                                                            **May 17, 2023**

### I. INTRODUCTION

On September 2, 2015, pro se Plaintiff Thomas Johnson was arrested on state felony charges and brought to the State Correctional Institution in Chester County, Pennsylvania ("SCI Chester"). Later that day, while Plaintiff was being transported to the infirmary inside SCI Chester by three prison guards, his shoulder was dislocated. Over the next four months, he was transferred to various state prisons and sought medical attention at each one for increased shoulder pain and swelling. According to Plaintiff, he was not provided with the medical care he requested and, as a result, could not raise his arm for over a year. Given these events, Plaintiff filed a lawsuit under 42 U.S.C. § 1983 against Defendants Joseph Korszniak, Jill McGinley, and Muhammad Golsorkhi, all of whom are medical personnel at the State Correctional Institution at Graterford ("SCI Graterford"), one of the prisons to which he was transferred.[1] In his lawsuit, Plaintiff alleges that

---

[1] When the original Complaint was filed, Defendants Korszniak, McGinley, and Golsorkhi all worked at SCI Graterford in different capacities. Korszniak was employed as the Correctional Health Care Administrator and McGinley was employed as a Registered Nurse. Golsorkhi worked at SCI Graterford as a doctor, but Plaintiff does not allege whether Golsorkhi was

1

Defendants violated his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.  Before the Court are Defendants' Motions to Dismiss his Complaint.  (Doc. Nos. 13, 22, 32.)[2]

## II.     BACKGROUND[3]

On September 2, 2015, Pennsylvania State Troopers arrested Plaintiff and transported him to SCI Chester.  (Doc. No. 1 at 9.)  After Plaintiff was strip searched, his hands were cuffed behind his back and a tether was applied to the handcuffs.  (Id.)  While Plaintiff was being escorted by three guards to the infirmary, one of the guards "pulled the rope (teether) [sic] and je[r]ked [his] arms up in the air, while the other guards tried to grab [him] in order to keep [him] from falling."  (Id.)  Plaintiff then "scream[ed] out in pain [']what the fuck you trying to do[,] break my arms[?']"  (Id.)  The guards assured Plaintiff that "it was a[n] accident."  (Id.)

On September 3, 2015, Plaintiff felt pain and tingling in his shoulder.  (Id.)  Then, on September 4, 2015, Plaintiff was "seen by the doctor" and he described to the doctor the pain he was experiencing in his shoulder.  (Id.)  The doctor told Plaintiff that he was ordering an X-ray and was considering ordering a magnetic resonance image (MRI) of his shoulder.  (Id.)

---

  employed by SCI Graterford or worked there as an independent contractor.  The Complaint was later amended as described in n. 2, but the employment status of the three individual Defendants when the Complaint was changed is unclear.

[2] In the original Complaint, Plaintiff includes his factual allegations and names as Defendants Joseph Korszniak and "John and Jane Does Not Known at This Time."  In his Response in Opposition to the Motions to Dismiss the original Complaint, he realleges the same facts set forth in the original Complaint that relate to Korszniak and Jill McGinley.  He adds additional facts against Defendant Muhammad Golsorkhi which are described infra.  In his Response, he also identifies as Defendants Korszniak, McGinley, and Golsorskhi.  Because Plaintiff is proceeding pro se, the Court will construe his allegations liberally and will consider the information in Plaintiff's Response as being included in the original Complaint.

[3] The facts are set forth in the light most favorable to Plaintiff.  They must be viewed in this way at this stage of the litigation.

2

On September 28, 2015, Plaintiff was transferred to SCI Graterford and, upon his arrival, was ordered to remove his clothes for a search. (Id. at 10.) When the guard conducting the search saw Plaintiff's shoulder, he informed his Sergeant who then "made a call to medical and told them I have a guy who's [sic] shoulder is the size of a watermellon [sic] and he needs to be seen by medical right now cause he is in pain and I'm trying to cover me and my guards['] ass from any type of complaints." (Id.) Plaintiff was taken to intake to see Defendant Jill McGinley, the Registered Nurse, who told him that she could not do anything for him at that time.[4] (Id.) She offered Plaintiff Motrin, but he refused because he is allergic. (Id.) Plaintiff then told McGinley that she would have known that he was allergic to Motrin had she done her "fucking job" and reviewed his medical records. (Doc. No. 85 at 2-3.) McGinley placed Plaintiff on a waitlist to be seen by a doctor the next day rather than on an emergency list that would put doctors on notice that he should be examined as soon as possible. (Doc. Nos. 1 at 10; 85 at 2-3.) Plaintiff alleges that McGinley did so in retaliation for his telling her to do her job. (Doc. No. 85 at 3.) However, he was not seen by a doctor the next day. (Doc. No. 1 at 10.)

On October 10, 2015, Plaintiff filed a grievance about the lack of medical attention he received.[5] (Id.) Plaintiff also contacted Defendant Joseph Korszniak, the Corrections Health Care Administrator at SCI Graterford, and told him "about not being seen . . . and he did not respond to my request slip delaying [him] medical treatment to [his] shoulder." (Id.) Then, on October 23, 2015, Defendant Korszniak denied Plaintiff's grievance, stating: "On intake the provider does not

---

[4]  As noted, McGinley is not named in the original Complaint as a Defendant. The Complaint, however, refers to actions taken by a nurse, which could only be Jill McGinley. McGinley is the only named Defendant who is a Registered Nurse.

[5]  Plaintiff asserts that he saw a doctor and physician's assistant, but it is unclear on what date this occurred. It appears, however, that this happened between October 1, 2015, which is the day Plaintiff avers in his Complaint that he was not seen by medical staff, and October 10, 2015, which is the day Plaintiff filed a grievance for receiving inadequate medical care.

3

have adequate time to review your entire file. However, she did refer you to chronic care clinic." (Id. at 10-11, 14.) On November 6, 2015, Plaintiff challenged Korszniak's decision by filing another grievance, which was denied two weeks later by Cynthia Link, SCI Graterford's Facility Manager. (Id. at 11, 13.)

The Complaint does not name or refer to any actions taken by Defendant Muhammad Golsorkhi. Rather, Plaintiff asserts for the first time in his Response in Opposition to the Motions to Dismiss allegations against Golsorkhi which, as noted, the Court is incorporating into the original Complaint:

> [He] works at SCI Graterford and is supposed to see and examine every new admitted inmate[] that enter[s] SCI Graterford prison with medical needs and given a physical examination and provide and describe the appropriate medication or treatment that the inmate may need[.] Dr. Golsorkhi[] lied and falsified plaintiff[']s medical records[] when he [had] written that he examined plaintiff and renew[ed] plaintiff['s] medical records. . . . There is no way that Dr. Golsorkhi could have seen or examined plaintiff, and not see what the doctor from SCI Chester has already started with [my] . . . treatment, there is no possible way that defendant Dr. Golsorkhi s[aw] and examined plaintiff and doesn't treat him or describe anything in the medical records concerning plaintiff['s] injury or the pain that he was in[.] . . . [T]here is absolutely nothing in the medical records that shows that [] Plaintiff was treated for shoulder injury, so how can Dr. Golsorkhi flat out lie and write in the records that I was seen and examined by him but not mention nothing [sic] about plaintiff['s] shoulder injury?

(Doc. No. 85 at 3.)

Plaintiff continues by asserting that:

> [I]nstead[,] the defendant['s] attorney wants this Honorable court to ignore facts and just believe in their theater of lies and fantasy and illusion.
> . . .
> The defendants want this court to ignore the facts, because they now want this court to believe that Dr. Golsorkhi, did nothing wrong by falsifying his record and lying about it, violating its own policy, and the Department of [C]orrections['s] policy, and the health care provider['s] policy as well.

(Id. at 3-4.)

4

On November 19, 2015, Plaintiff was transferred to the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"). (Doc. No. 1 at 11.) There, he was administered pain medication by a nurse because the doctors "left for the day." (Id.) The next day, on November 20, 2015, Plaintiff saw a doctor who asked him what happened to his shoulder. (Id.) Plaintiff explained what happened to him and that he did not receive any medical treatment at SCI Graterford. (Id.) The doctor ordered an X-ray and prescribed medication to reduce the swelling in his shoulder. (Id.) The X-ray did not reveal any signs of broken bones. (Id.) After the appointment, Plaintiff "kept complaining about [how his] shoulder was in pain and [he] needed a[n] MRI[,] but the [physician's assistant] and [doctor] stated not yet but let[']s try thearphy [sic]." (Id.) Plaintiff's therapy sessions were not successful in reducing the pain he felt in his shoulder. (Id.) As a result, the doctor ordered an MRI. (Id.) As of January 4, 2016, however, Plaintiff was not given an MRI of his shoulder. (Id.) Plaintiff avers that "the doctors at SCI [Huntingdon] . . . refuse[d] to send [him] out to the hospital [be]cause they didn't want to pay for treatment." (Id.) In addition, Plaintiff alleges that while he was at court in Delaware County, Pennsylvania, he was told that he was "place[]d on [a] list to see a [specialist]," but was "transfer[red] back to [SCI] Huntingdon." (Id.)

On September 1, 2017, Plaintiff filed a one-count Complaint against Defendants Korszniak and "John and Jane Does Not Known at This Time," alleging under 42 U.S.C. § 1983 a violation of his Eighth Amendment right to be free from cruel and unusual punishment. (See id.) Plaintiff later added the facts described above to his Complaint, which initially only named Korszniak as a Defendant. Plaintiff replaced John and Jane Does with Defendants McGinley, Golsorkhi, Michael

5

Gomes, Kevin Kollman, and Mark McConnell,[6] which he was granted leave to do. (Doc. Nos. 11, 14.) However, on April 24, 2023, Plaintiff filed a "Motion to Dismiss" Defendants Gomes, Kollman, and McConnell. (See Doc. No. 83.) On April 27, 2023, the Court granted the Motion. (Doc. No. 84.) Accordingly, only Joseph Korszniak, Jill McGinley, and Muhammad Golsorkhi remain as Defendants in this case.

### III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323 (3d Cir. 2022), set forth a three-part analysis

---

[6] At SCI Huntingdon, Kollman is a doctor and both Gomes and McConnell are physician's assistants. (Id.)

that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> The first step in that process requires an articulation of the elements of the claim. . . . The second step involves reviewing the complaint and disregarding any "'formulaic recitation of the elements of a claim' or other legal conclusion," . . . as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual[]" . . . . The third step evaluates the plausibility of the remaining allegations. That involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor.

Id. at 327-28 (citations omitted). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV. ANALYSIS

Against the three remaining Defendants in this case—Korszniak, McGinley, and Golsorkhi—Plaintiff alleges an Eighth Amendment violation under 42 U.S.C. § 1983 for receiving inadequate medical care. Although the Complaint does not specify whether Plaintiff is suing

7

Defendants in their individual or in their official capacity, the Court will treat the claim as being raised against Defendants in both their individual and their official capacity. See Lyman v. Phila. Ct. of Common Pleas Domestic Rels. Div., 751 F. App'x 174, 177 (3d Cir. 2018) ("Courts are to construe complaints so as to do substantial justice, . . . keeping in mind that pro se complaints in particular should be construed liberally.") (quoting Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004)).

Each Defendant filed a separate Motion to Dismiss. (See Doc. Nos. 13, 22, 32.) As discussed more fully infra, Plaintiff's § 1983 claim against each Defendant will be dismissed. First, Plaintiff's § 1983 claim against Korszniak, McGinley, and Golsorkhi in their official capacity will be dismissed because such a claim is treated as one against the Commonwealth of Pennsylvania which enjoys state sovereign immunity under the Eleventh Amendment to the United States Constitution. Second, Plaintiff's § 1983 claim against Korszniak in his individual capacity will be dismissed because Plaintiff fails to plausibly allege that Korszniak was personally involved in his medical care. Third, Plaintiff's § 1983 claim against McGinley in her individual capacity will be dismissed because he did not plausibly allege that she was deliberately indifferent to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Lastly, Plaintiff's § 1983 claim against Golsorkhi will be dismissed because Plaintiff fails to allege that Golsorkhi was personally involved in his medical care. Consequently, all three Motions to Dismiss (Doc. Nos. 11, 22, 32) will be granted.

      **A.    Plaintiff's § 1983 Claim against Defendants Korszniak, McGinley, and Golsorkhi in Their Official Capacity Will Be Dismissed**

Construing the pro se Complaint liberally, the Court first will address Plaintiff's § 1983 claim against Defendants Korszniak, McGinley, and Golsorkhi in their official capacity.

### 1. Defendants Korszniak, McGinley, and Golsorkhi Are Not Amenable to Suit under § 1983

Defendants Korszniak, McGinley, and Golsorkhi are not amenable to suit under § 1983 in their official capacity because they (1) enjoy state sovereign immunity under the Eleventh Amendment and (2) are not "persons" liable to suits for damages under § 1983.

The Eleventh Amendment to the United States Constitution bars suits against states in federal court. See Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008) (describing "immunity of States from suit in the federal courts" as a "fundamental aspect of state sovereignty") (citing N. Ins. Co. v. Chatham Cnty., 547 U.S. 189, 193 (2006)).  It also prohibits private parties from suing in federal courts state agencies and state officials in their official capacities.  See Capograsso v. Sup. Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009).  This is because "a suit against a governmental official in his or her official capacity is treated as a suit against the government agency itself." A.M. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).  State sovereign immunity precludes private suits against the State or its agencies, departments, or employees "without regard to the nature of the relief sought." C.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000) (en banc).

Defendant Korszniak is the Correctional Health Care Administrator and McGinley is a Registered Nurse employed by the Pennsylvania Department of Corrections (the "DOC"). Regarding Golsorkhi, although it is unclear whether he was an employee of the DOC at SCI Graterford, construing the Complaint liberally, he might be an employee.  The DOC is an executive department of the Commonwealth of Pennsylvania.  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 255 (3d Cir. 2010) (citing Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000) (citing 71 P.S. § 61)).  The DOC and its employees, thus, "share[] in the Commonwealth's

Eleventh Amendment immunity." Lavia, 224 F.3d at 195. However, "[a] State's immunity from suit is not absolute." Lombardo, 540 F.3d at 195.

There are three limitations to a State's sovereign immunity. First, sovereign immunity does not apply where Congress specifically abrogates it "in the exercise of its power to enforce the Fourteenth Amendment." Id. at 195. Second, sovereign immunity does not apply where the State consents to suit, voluntarily invokes federal court jurisdiction, or otherwise clearly declares its intent to submit itself to federal jurisdiction, i.e., waiver. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76 (1999). Lastly, sovereign immunity does not apply where a private party sues "individual state officers . . . in their individual capacities for prospective injunctive relief and declaratory relief to end continuing or ongoing violations of federal law." MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania, 271 F.3d 491, 506 (3d Cir. 2001) (citing Ex parte Young, 209 U.S. 123 (1908)).

The Commonwealth of Pennsylvania has not waived its sovereign immunity under the Eleventh Amendment under any of the three limitations noted above. First, in Downey v. Pa. Dep't of Corr., the Third Circuit held that "Congress did not abrogate Eleventh Amendment immunity via § 1983." 968 F.3d 299, 310 (3d Cir. 2020). Second, in Lavia, the Third Circuit held that "the Commonwealth has not lost its Eleventh Amendment immunity by virtue of waiver." 224 F.3d at 196. Third, Plaintiff is not suing Defendants Korszniak, McGinley, and Golsorkhi for prospective injunctive relief. Thus, because any claim against them in their official capacity is treated as a claim against the Commonwealth and the Commonwealth has not abrogated its sovereign immunity, Korszniak, McGinley, and Golsorkhi cannot be sued in federal court.

Moreover, Defendants Korszniak, McGinley, and Golsorkhi are not amenable in their official capacity to suit for damages brought under § 1983 for an additional reason. In Will v.

10

Michigan Dep't of State Police, the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 69-71 & n.10 (1989). To the extent that Plaintiff sues Defendants Korszniak, McGinley, and Golsorkhi in their official capacity as employees of the DOC, they are not amenable to suit for damages under § 1983. Thus, Plaintiff's claim against the three Defendants in their official capacity fails as a matter of law.

### B. Plaintiff's § 1983 Claim against Korszniak and McGinley in Their Individual Capacity Will Be Dismissed

In his Motion to Dismiss, Defendant Korszniak asserts that the Complaint fails to allege facts showing his personal involvement in the decisions made by medical professionals that form the basis of Plaintiff's claim.[7] (Doc. No. 13 at 7-10.) In addition, McGinley asserts in her Motion to Dismiss that her personal involvement with Plaintiff was so de minimis that she was not deliberately indifferent to his medical needs. (Doc. No. 22 at 7-8.)

On the other hand, Plaintiff, maintains that Defendants' personal involvement delayed his medical treatment and worsened his injuries. (Doc. No. 85 at 2-6.) Specifically, Plaintiff claims that Korszniak "has full power and authority to tell any doctor or Physician assistant [] to see a[n] inmate [and] treat him if that person need[s] medical treatment" and that he abdicated his responsibilities in not ensuring that Plaintiff was evaluated by a physician. (Id. at 6.) As for Defendant McGinley, Plaintiff argues that she told him that he would be placed him on the "PA List." (Id. at 2.) According to Plaintiff, the "PA List" is the doctor's "sick call list [the placement

---

[7] In Korszniak's Motion to Dismiss, he makes two additional arguments not raised in McGinley's Motion. First, he argues that "Plaintiff cannot maintain a constitutional claim for his grievance being denied." (Doc. No. 13 at 10.) Second, he asserts that Plaintiff failed to plausibly allege deliberate indifference by Korszniak. (Id. at 11-15.) However, these arguments need not be addressed because the Motion will be granted on Eleventh Amendment and on other grounds.

11

on] which usually means the inmate will be seen within 24 hours."  (Id.)  In his Response in Opposition, Plaintiff contends, instead, that McGinley placed him on the chronic care list, which means that he would be seen by a doctor "in the near future."  (Doc. No. 85 at 2.)

To state a claim under § 1983, a plaintiff must show both (1) a violation of a constitutional right and (2) personal involvement by the defendant.  See Chavarriage v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015).  Here, Plaintiff fails to plausibly allege that (1) Korszniak was personally involved in his medical care, and (2) McGinley violated his constitutional rights under the Eighth Amendment by being deliberately indifferent to his medical needs.  Korszniak's personal involvement will be discussed first.

### a. Plaintiff Fails to Plausibly Allege That Defendant Korszniak Was Personally Involved in His Medical Care

Plaintiff avers in the Complaint that Korszniak's denial of his grievance exacerbated the pain and swelling he experienced in his shoulder.  Plaintiff contends that Korszniak's decision makes him personally involved in the alleged deliberate indifference to his serious medical needs.  Korszniak argues, to the contrary, that he was not personally involved because "he has no control over or involvement in medical decisions or over the medical personnel employed by the independent medical provider that treats inmates."  (Doc. No. 13 at 7.)  For reasons that follow, Plaintiff fails to plausibly allege that Korszniak was personally involved in the denial of medical care.

As the Third Circuit held in Chavarriage:

> "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).  Next, a plaintiff must demonstrate a defendant's "personal involvement in the alleged wrongs."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's

> participation in or actual knowledge of an acquiescence in the wrongful conduct. Id. Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive. Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6. A plaintiff "must portray specific conduct by state officials which violates some constitutional right." Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).

806 F.3d at 222.

The review and denial by a prison official in Korszniak's position of a grievance filed by an inmate is insufficient as a matter of law to plausibly constitute personal involvement under § 1983 in an alleged Eighth Amendment violation. In Dooley v. Wetzel, a prisoner asserted under § 1983 claims against Department of Corrections ("DOC") employees alleging violations of his Eighth Amendment rights by exhibiting deliberate indifference to his mental health needs. 957 F.3d 366, 369-70, 372 (3d Cir. 2020). In his complaint, the plaintiff challenged a prison official's denial of his grievance regarding his mental health, and also that prison official's supervisor for upholding the denial. See id. at 371. The district court dismissed the complaint against the two prison officials for lack of personal involvement and the plaintiff appealed the dismissal to the Third Circuit. See id. at 374. The Third Circuit agreed with the district court and held that "the only involvement alleged in the Complaint is [the two officials'] review and denial of [the plaintiff's] grievance. We therefore agree that [the plaintiff] failed to state a claim and conclude that the District Court did not err in dismissing the Complaint on that ground." Id.; see also Mincy v. Chmielsewski, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.").

Furthermore, in Brown v. Wetzel, the court dismissed the plaintiff's § 1983 claims against various prison officials, including Defendant Korszniak, because the plaintiff's allegations that "Korszniak is the head health care administrator at Graterford prison and, as such, is 'legally

13

responsible for its medical operation and treatment of all inmates for the prison' . . . are insufficient to establish § 1983 liability." No. 13-5469, 2014 WL 5493244, at *4 (E.D. Pa. Oct. 29, 2014).

Here, Plaintiff does not attribute to Korszniak, the Correctional Health Care Administrator at SCI Graterford, any plausible allegation of deliberate indifference to his medical needs. Korszniak's only role was to review and deny on October 23, 2015 Plaintiff's grievance. Moreover, Plaintiff's claim that Korszniak "is the healthcare Administrative [sic] whose job description include[s] being responsible to manage the medical department and health unit at SCI Graterford" is insufficient to establish Korszniak's liability under § 1983. (Doc. No. 85 at 4.) These claims do not show that Korszniak was personally involved in the healthcare administered to Plaintiff or that he had personal knowledge of Plaintiff's condition and treatment when medical care was requested by Plaintiff.

For the foregoing reasons, Defendant Korszniak's Motion to Dismiss (Doc. No. 13) will be granted and the § 1983 claim alleged in the Complaint against him will be dismissed.

          **b.    Plaintiff Fails to Plausibly Allege That Defendant McGinley Violated His Constitutional Rights**

Plaintiff fails to plausibly allege that McGinley violated his constitutional rights under the Eighth Amendment by being deliberately indifferent to his medical needs. In the Complaint, Plaintiff alleges that he visited with McGinley, she offered him Motrin for his shoulder pain, and she placed him on a waitlist to be seen by a doctor usually "within 24 hours." (Doc. Nos. 1 at 10; 85 at 2-3.) These were the only treatment options she could offer him at that time. These allegations, when viewed in the light most favorable to Plaintiff, do not show that McGinley was deliberately indifferent to his medical needs.

As an initial matter, the Complaint does not assert whether, at the time he suffered his shoulder injury and allegedly was denied adequate medical care, Plaintiff was a convicted prisoner

14

or whether he was a pretrial detainee. However, as discussed below, for purposes of assessing Plaintiff's inadequacy of medical care claim, this distinction is irrelevant.

"While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)). The Third Circuit has held that § 1983 claims by pre-trial detainees of inadequate medical care should be "based on the Due Process Clause of the Fourteenth Amendment." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

However, because "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" a pretrial detainee's "claim for inadequate medical care" is evaluated "under the standard used to evaluate similar claims brought under the Eighth Amendment." Id. (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).

"In Estelle, the Supreme Court held that the Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs." Id. at 582 (citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)). "In order to sustain [an inadequacy of care claim] under 42 U.S.C. § 1983, a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)) (footnote omitted). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or on that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326 347 (3d Cir. 1987).

Regarding the deliberate indifference prong of an inadequacy of care claim, the Third Circuit has noted that "claims of negligence or medical malpractice, without some more culpable mind, do not constitute 'deliberate indifference.'" Johnson v. City of Phila., 975 F.3d 394, 402 (3d Cir. 2020) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). Moreover, "'[m]ere disagreement as to the proper medical treatment' is also insufficient." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting Lanzaro, 834 F.2d at 346 (citations omitted)).

Here, assuming that Plaintiff's shoulder injury rose to the level of a serious medical need, the Complaint is devoid of facts alleging that McGinley was deliberately indifferent to Plaintiff's injury and request to see a doctor. As Plaintiff alleges, McGinley saw him on intake and offered him Motrin because it was the best she could offer him at the time. She also placed him on a waitlist, "which usually means the inmate will be seen within 24 hours" or the "near future." (Doc. No. 85 at 2.) Thus, Plaintiff's medical needs were alerted to medical staff at SCI Graterford by McGinley. And while Plaintiff may have been dissatisfied with McGinley's medical recommendations for his shoulder injury, this does not amount to deliberate indifference. Consequently, the Complaint fails to state a claim against McGinley for being indifferent to a serious medical need. Accordingly, McGinley's Motion to Dismiss (Doc. No. 22) will be granted.

**C.     Plaintiff Fails to Plausibly Allege That Defendant Golsorkhi Was Personally Involved in His Medical Care**

The original Complaint did not refer to any actions taken by Defendant Golsorkhi, a doctor working at SCI Graterford. Nor was he named as a Defendant in the original Complaint. Rather, Plaintiff asserted for the first time in his Response in Opposition to the Motions to Dismiss that Golsorkhi "is suppose[d] to see and examine every new admitted inmate[] that enter[s] SCI

16

Graterford prison with medical needs and given [sic] a physical examination and provide and describe the appropriate medication or treatment that the inmate may need." (Doc. No. 85 at 3.) Plaintiff further asserted in his Response that Golsorkhi never examined him and did not describe any medications Plaintiff needed to take and that "[t]here are no medical records to show that Plaintiff [was] ever . . . scheduled to see Dr. Golsorkhi." (Id.) As noted earlier, these facts as alleged in the Response will be incorporated into the original Complaint. But even with them, Plaintiff's § 1983 claim against Golsorkhi fails.

As noted above, the two requirements to state a claim under § 1983 are (1) the violation of a constitutional right and (2) personal involvement by the defendant. To establish the second prong of a viable § 1983 claim, a plaintiff "must portray specific conduct by state officials which violates some constitutional right." Chavarriage, 806 F.3d at 222 (quoting Gittlemacker, 428 F.2d at 3). Moreover, "[t]he Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980)). Here, Plaintiff has failed to plausibly allege, however, that Defendant Golsorkhi was personally involved in the medical care of Plaintiff.

In his Response in Opposition to the Motions to Dismiss, Plaintiff for the first time avers that Golsorkhi falsified medical records by attesting that he had examined Plaintiff and administered medications to him. (See Doc. No. 85 at 3.) This is Plaintiff's only allegation against Golsorkhi and, as noted, is incorporated into the Complaint. But even treating the facts alleged in Plaintiff's Response in Opposition (Doc. No. 85) as an amendment to the Complaint, Plaintiff fails to state a claim that Golsorkhi was involved in his medical care.

In <u>Harris v. Pennsylvania Dep't of Corr.</u>, the court considered whether falsification of medical records by prison medical staff constitutes deliberate indifference for purposes of an inadequate care claim under the Eighth Amendment. No. 13-2888, 2014 WL 941351, at *5 (E.D. Pa. Mar. 11, 2014). The court stated that the plaintiff's "allegation of falsifying medical reports, without more, does not support the inference that Robinson was deliberately indifference to Plaintiff's serious medical need." <u>Id.</u> Rather, the plaintiff "focuses on the essential 'wrongness' of submitting false medical reports." <u>Id.</u> Because there were no other "facts to support any inference that [the defendant] intentionally refused or delayed necessary treatment for non-medical reasons," the court in <u>Harris</u> stated that the plaintiff did not state an Eighth Amendment claim for inadequate medical care. <u>Id.</u>

Here, Plaintiff's only allegation against Golsorkhi is that he falsified his medical records and created a false report stating that he examined Plaintiff. (Doc. No. 85 at 3.) Plaintiff "does not allege how this falsification affected his medical treatment." <u>Harris</u>, 2014 WL 941351, at *5. Rather, similar to the plaintiff in <u>Harris</u>, Plaintiff here focuses on the inappropriateness of Golsorkhi's conduct:

> [B]ut instead the defendant['s] attorney wants this Honorable court to ignore facts and just believe in their theater of lies and fantasy and illusion.
> . . .
> The defendants want this court to ignore the facts, because they now want this court to believe that Dr. Golsorkhi, did nothing wrong by falsifying his record and lying about it, violating its own policy, and the Department of [C]orrections['s] policy, and the health care provider['s] policy as well.

(Doc. No. 85 at 3-4.)[8] Because the Complaint is devoid of allegations of how Golsorkhi's falsification of Plaintiff's medical records affects the adequacy of his care or constitutes deliberate

---

[8] To the extent the <u>pro se</u> Complaint can be construed that Plaintiff is arguing that Golsorkhi did see and examine him, this would not amount to deliberate indifference to his medical needs.

18

indifference, he has failed to state a claim against Golsorkhi. Golsorkhi's Motion to Dismiss (Doc. No. 32), therefore, will be granted.

### D. Plaintiff Will Not Be Granted Leave to Amend

"[D]istrict courts should dismiss complaints under the PLRA with leave to amend 'unless amendment would be inequitable or futile." Dooley, 957 F.3d at 375 (quoting Grayson v. Mayview State Hosp., 293 F.3d 103, 108, 110 (3d Cir. 2002)). Amendment would be futile here because (1) Plaintiff has not sufficiently alleged involvement by Defendant Korszniak aside from his denial of Plaintiff's grievance, (2) McGinley is not a doctor but nonetheless saw Plaintiff, attempted to administer Motrin to him, added him to the chronic care list, and was not indifferent to his medical needs, and (3) Golsorkhi is only charged with falsifying medical records, which alone does not constitute deliberate indifference. In addition, on October 24, 2017, Plaintiff was granted leave to amend the Complaint. (Doc. No. 10.) As described above, he did so through his Response in Opposition to the Motions to Dismiss (Doc. No. 85), but his changes were futile. No new facts could overcome the deficiencies in his Complaint.

### V. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (Doc. Nos. 13, 22, 32) will be granted. An appropriate Order follows.